NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SONNIE L. COOPER,<br><br>      Petitioner,<br><br> v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | Civil Action No. 24-00547 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Sonnie L. Cooper's petition for a writ of error coram nobis vacating his conviction and sentence for conspiracy to obstruct commerce by extortion under color of official right, pursuant to the Hobbs Act, 18 U.S.C. § 1951.[1] (ECF No. 1.) The Government opposed, and Cooper replied. (ECF Nos. 3, 4.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Cooper's petition for a writ of error coram nobis is **DENIED**.

**I. BACKGROUND**

The relevant factual and procedural background is set forth in greater detail in the United States Court of Appeals for the Third Circuit's Opinion denying the appeal of Cooper and his co-defendant Ronald Salahuddin's challenges to their criminal convictions, which the Court

---

[1] The Court has the "authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a)." *United States v. Contant*, 679 F. App'x 95, 99 (3d Cir. 2017).

incorporates herein. *See United States v. Salahuddin*, 765 F.3d 329 (3d Cir. 2014).[2] In denying Salahuddin's subsequent petition for a writ of error coram nobis, the court summarized the facts as follows:

> Salahuddin was formerly Deputy Mayor of the City of Newark in charge of Public Enforcement, and [Cooper] owned a demolition business in Newark. The conspiracy between the two involved a circular plan whereby Salahuddin would direct government contracts to a third party, Nicholas Mazzocchi ("Mazzocchi"), if Mazzocchi would then subcontract work to Cooper. This plan benefitted Salahuddin, who had a silent financial interest in Cooper's business, S. Cooper Brothers Trucking. The Government argued at trial that the idea for the conspiracy originated when Salahuddin met with Joseph Parlavecchio ("Parlavecchio"), who provided consulting work to several Newark demolition companies, including Mazzocchi's. Indeed, Salahuddin and Cooper were introduced to Mazzocchi through Parlavecchio. Unbeknownst to the other three, Mazzocchi was cooperating with the FBI and was recording his conversations with Salahuddin, Cooper, and Parlavecchio.
>
> Based on these dealings and the conversations recorded by Mazzocchi, the Government brought charges against Salahuddin and Cooper. On February 18, 2010, a grand jury in Trenton, New Jersey, returned a five-count indictment against Defendants. Count One charged Defendants with a conspiracy to obstruct interstate commerce by extortion under color of official right in violation of 18 USC § 1951(a), also known as the Hobbs Act. Count Two charged that Defendants knowingly and willfully attempted to obstruct interstate commerce by extortion under the color of official right, in violation of 18 USC § 1951(a) and 18 USC § 2. Counts Three through Five charged violations of 18 U.S.C. § 666(a)(1)(B) and 18 USC § 2, in that Defendants knowingly and corruptly solicited, demanded, accepted, and agreed to accept as bribes things of value to influence and reward Salahuddin's effort to steer Newark demolition contracts from the City of Newark to Mazzocchi and Cooper. Following a trial, the jury returned its verdict on October

---

[2] The relevant facts are also set forth in the court's opinion on Cooper and Salahuddin's post-trial motions, *see United States v. Salahuddin*, Crim. No. 10-104, 2012 WL 2952436 (D.N.J. July 19, 2012), and the court's opinion on Salahuddin's petition for a writ of error coram nobis, *see Salahuddin v. United States*, Crim. No. 10-104, 2018 WL 5342766 (D.N.J. Oct. 29, 2018).

2

> 14, 2011, and Defendants were convicted only on Count One, that they conspired to violate the Hobbs Act.

*Salahuddin v. United States*, Crim. No. 10-104, 2018 WL 5342766, at *2 (D.N.J. Oct. 29, 2018).

Towards the end of their trial, Cooper and Salahuddin moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. *Salahuddin*, 765 F.3d at 336. The court deferred ruling on the motion until after the jury returned its guilty verdicts, when Cooper and Salahuddin also sought a new trial under Federal Rule of Criminal Procedure 33. *Id.* The court denied both motions. *Id.* On March 4, 2013, the court sentenced Cooper to two years of probation—which included house arrest for eight months, but no time in prison—and imposed a fine of $3,000. *Id.* (*See also* ECF No. 1 at 7-8.[3])

Cooper and Salahuddin filed separate appeals raising different issues: Salahuddin raised "issues with the jury instructions and the proofs required for conviction under the Hobbs Act" and Cooper raised "issues with the weight and sufficiency of the evidence supporting the jury verdict and the Government's alleged selective prosecution and outrageous conduct in its investigation and prosecution." *Id.* at 333. The Third Circuit, in a precedential opinion, affirmed both convictions. *Id.* On April 2, 2018, Salahuddin filed a petition for a writ of error coram nobis, which the court denied.[4] *Salahuddin*, 2018 WL 5342766, at *13. More than five years later, on October 31, 2023, Cooper filed this petition for a writ of error coram nobis. (ECF No. 1.[5])

---

[3] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4] Salahuddin filed an untimely appeal of the denial of his coram nobis petition, so the Third Circuit never reviewed the district court's decision on the merits. *See United States v. Salahuddin*, 803 F. App'x 663 (3d Cir. 2020).

[5] Cooper initially filed his petition on the docket of his criminal case, *see* Crim. No. 10-00104 at ECF No. 167, but the Court thereafter directed the Clerk to refile the petition as a new civil matter, *id.* at ECF No. 172.

3

## II.  LEGAL STANDARD

"The writ of error coram nobis is an 'infrequent' and 'extraordinary' form of relief that is reserved for 'exceptional circumstances.'" *United States v. Babalola*, 248 F. App'x 409, 411 (3d Cir. 2007) (quoting *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir.1989)).  A petition for a writ of error coram nobis "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has completed serving his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255." *Id.* (citing *Stoneman*, 870 F.2d at 105-06).  "[T]he standard for obtaining [coram nobis relief] is more stringent than that applicable on direct appeal or in habeas corpus." *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011).  Indeed, the United States Supreme Court has noted that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of error coram nobis] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (alteration in original) (citation omitted); *see also Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020); *Baranski v. United States*, 880 F.3d 951, 954 (8th Cir. 2018) ("Coram nobis relief has been called the criminal-law equivalent of the Hail Mary pass in American football.").  "An error which could be remedied by a new trial, such as an error in jury instructions, does not normally come within the writ, and it is presumed that the prior proceedings were properly conducted." *Ragbir*, 950 F.3d at 62 (citation modified).

In *Ragbir*, the Third Circuit outlined the five prerequisites for obtaining coram nobis relief: "the petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid conviction; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the time of trial; and (5) asserted error(s) of a fundamental kind." *Id.* at 62.  The Third Circuit requires "strict adherence" to this five-part test.  *United States v. De Castro*, 49 F.4th 836, 842 (3d Cir. 2022).  Accordingly, "a petition must be denied if even one element is not satisfied." *Id.*

### III. DISCUSSION

Cooper contends that he is entitled to coram nobis relief as he could not have been guilty of Hobbs Act conspiracy because: (1) neither he nor his co-defendant "acted under color of official right" or engaged in an "official act"; (2) neither he nor his co-defendant "received anything of value, or agreed to the object of a conspiracy"; and (3) the jury instructions given by the district court were "inconsistent with and deviated from the required instruction under *McDonnell v. United States*," 579 U.S. 550 (2016), which was issued by the Supreme Court more than four years after Cooper's trial. (ECF No. 1 at 14-15.) Cooper submits that his conviction "occurred only through several unconscionable violations" of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. (*Id.* at 6, 15.)

The Government concedes that the first two prerequisites for coram nobis relief are met—that Cooper is not in custody and that he suffers continuing consequences from his prior conviction. (ECF No. 3 at 20.) However, the Government argues that Cooper does not meet the final three prerequisites for obtaining coram nobis relief. (*Id.*) The Court agrees and addresses each in turn.

#### A. Sound Reasons for Delay

"[A] petitioner has no fixed deadline by which he must seek coram nobis relief." *De Castro*, 49 F.4th at 843. Although "a petitioner is not required to challenge his conviction at the earliest opportunity," he must "have sound reasons for not doing so." *Ragbir*, 950 F.3d at 63 (citation modified). "[T]he more time that elapses between a party's conviction and his petition for coram nobis, the less likely it becomes that sound reasons exist." *Id.* at 63. The Third Circuit "does not apply a timeliness standard for coram nobis that is forgiving of delay and dilatoriness." *Id.* at 64.

Cooper filed his petition for a writ of error coram nobis on October 31, 2023: (i) twelve years after his conviction; (ii) nine years after the Third Circuit denied his direct appeal; (iii) seven

years after the Supreme Court issued its decision in *McDonnell*, which Cooper relies on extensively; and (iv) five years after Cooper's co-defendant Salahuddin filed his own petition for coram nobis relief. Cooper argues that his petition is timely because he has provided sound reasons for delay. (ECF No. 1 at 16.) Cooper also argues that because he is actually innocent, the Court must overlook any procedural bar to him obtaining coram nobis relief.[6] (*Id.* at 17.) The Court is not persuaded by either argument.

In support of his timeliness argument, Cooper submits that he "is not an attorney and had his means of income stripped from him by virtue of the invalid conviction here." (ECF No. 1 at 16.) Thus, Cooper asserts that "he was not aware of the availability of coram nobis relief until very recently" and was unable to "retain an attorney to pursue such relief, given the collateral consequences of the instant conviction." (*Id.*) The Government counters that "Cooper has known of the purported errors discussed in the Petition since his conviction in 2011" and argues that Cooper's claims were already raised or should have been raised "long ago." (ECF No. 3 at 20.)

The Court finds that Cooper's vague assertions about being unable to afford an attorney to pursue coram nobis relief on his behalf are insufficient to meet his burden of showing sound reasons for delay. The Third Circuit has rejected the argument that a petitioner's indigence was a sound reason for delaying bringing a coram nobis petition. *See United States v. Homer*, 393 F. App'x 33, 36 (3d Cir. 2010) ("Even if [the petitioner] lacked funds to retain counsel, he could have pursued [coram nobis] relief decades ago by simply filing a pro se petition setting forth the factual

---

[6] To the extent Cooper argues that the Court should consider his petition even if the Court concludes it is untimely because "notions of fundamental fairness dictate that errors of this magnitude require a remedy without regard to these limitations," (ECF No. 1 at 17), such an argument lacks merit and is contrary to binding Third Circuit precedent demanding "strict adherence" to the five-part coram nobis test set forth in *Ragbir*. *See De Castro*, 49 F.4th at 842.

basis for his claim. His failure to do so cannot be excused."). Cooper suggests that the Third Circuit's decision in *United States v. De Castro* supports a different result. There, according to Cooper, the court "held that it was not clear error for the district court to find 'sound reasons' existed for [the petitioner's] delay when he was 'without "easy or ready access"' to his attorney or other legal resources.'" (ECF No. 4 at 6 (quoting *De Castro*, 49 F.4th at 844).) But *De Castro* is readily distinguishable. For one, the petitioner's delay in seeking relief was only thirteen months, which the court reasoned was "significantly less than the six-year gap in *Ragbir* and the four-year gap in *Mendoza* [*v. United States*, 690 F.3d 157 (3d Cir. 2012)]." Further, the Third Circuit reasoned that it was not clear error for the district court to excuse the petitioner's delay while he was out of the country during the Covid-19 pandemic. *See id.* Against this backdrop, Cooper's explanation for his substantial delay falls far short.

Even assuming, for the sake of argument, that Cooper could not bring his coram nobis petition until after the Supreme Court's *McDonnell* decision, Cooper does not offer a compelling basis to explain why he waited more than seven years after *McDonnell* to seek relief. Cooper's co-defendant's unsuccessful bid for coram nobis relief is instructive on this point: Salahuddin also relied on *McDonnell*, but the Honorable Freda L. Wolfson, U.S.D.J. (ret.) held that his 21-month delay following *McDonnell* was "a procedural bar to his ability to successfully vacate his criminal conviction." *Salahuddin*, 2018 WL 5342766, at *7; *see also Mendoza*, 690 F.3d at 160 (finding that a four-year delay in bringing a coram nobis petition based on ineffective assistance of counsel was unjustified); *Cocco v. United States*, Civ. No. 21-97, 2024 WL 489537, at *3-4 (D.N.J. Feb. 8, 2024) (denying coram nobis petition based on eleven-year delay); *United States v. Folk*, Crim. No. 11-292, 2025 WL 1592078, at *3 (M.D. Pa. June 5, 2025) (holding that coram nobis petition

7

was untimely when it was filed eight years after the petitioner's conviction and five years after the Supreme Court decision on which the petitioner relied).

Cooper also contends that any delay on his part is of "minimal importance" and should be excused because he has raised a claim of "actual innocence." (ECF No. 4 at 10.) In the habeas context, "[t]he 'actual innocence' exception is properly invoked where a petitioner 'establish[es] that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him' of the underlying crime." *Salahuddin*, 2018 WL 5342766, at *8 (quoting *Cordaro v. United States*, Civ. No. 17-00215, 2017 WL 3839916, at *4 (M.D. Pa. Sept. 1, 2017)). As an initial matter, Cooper identifies no Third Circuit precedent which stands for the proposition that a claim of actual innocence can excuse a delay in seeking coram nobis relief. Cooper submits that "[i]f a petition is based on claims of actual innocence or grounds showing a clear denial of Due Process, such as here, the petition should be permitted and considered on the merits at any time." (ECF No. 1 at 13-14 (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).) But the court considered—and rejected—this argument when it was advanced by Salahuddin in his coram nobis petition:

> Salahuddin fails to sufficiently demonstrate that the "actual innocence" exception extends to a petitioner's failure to timely file a writ of error coram nobis. Salahuddin, in a conclusory fashion, instead avers that his actual innocence "directly excuse[s] untimely petitions for common law relief such as writs of coram nobis" by generally referencing the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), without providing further discussion. . . . However, that decision is inapplicable to the circumstances at hand, as the Supreme Court's analysis, there, was confined in the context of habeas relief. More importantly, Salahuddin does not cite any case law within this circuit wherein a court applied the "actual innocence" exception to an untimely petition for coram nobis.

*Salahuddin*, 2018 WL 5342766, at *8 (citation modified).  And Cooper's reliance on out-of-circuit caselaw does not lead the Court to conclude otherwise.[7]

Cooper also relies on *Restrepo v. United States*, where the court, analogizing to habeas law, noted that if a coram nobis petitioner "were actually innocent, it would be an extraordinary case that could negate his procedural default."  Civ. No. 12-3517, 2012 WL 5471151, at *9 (D.N.J. Nov. 8, 2012).  While the Third Circuit has since explained that "comparisons to habeas law may be helpful when considering unexplored areas of coram nobis law" it cautioned that "when dealing with coram nobis issues on which this Court has spoken, resorting to statutory habeas principles is unnecessary and improper."  *De Castro*, 49 F.4th at 843.  As the Third Circuit has spoken on the issue of what constitutes an unreasonable delay in seeking coram nobis relief, *see, e.g.*, *Ragbir*, 950 F.3d 54, the Court does not find it necessary to look to habeas law on this issue.

Regardless, Cooper's contention that he is "actually innocent" lacks merit.  The Government correctly asserts that Cooper and Salahuddin, proceeding before the district court post-trial and the Third Circuit on appeal, already raised most of the arguments Cooper makes in support of his instant petition.[8]  (ECF No. 3 at 30.)  For example, Cooper argues that he could not

---

[7]  In Cooper's reply brief, he urges the Court to adopt the reasoning of *United States v. Lesane*, 40 F.4th 191, 201 (4th Cir. 2022).  In that case, according to Cooper, the Fourth Circuit, "reversed the district court's denial of petitioner's writ for error coram nobis despite the 12-year delay in filing the petition because the petitioner had raised a claim of actual innocence."  (ECF No. 4 at 6.)  Aside from being non-binding on this Court, *Lesane* is factually inapposite.  There, it was undisputed that the petitioner was actually innocent.  *Id.* at 200.  Thus, the court applied a relaxed timeliness standard, reasoning that "[i]n a clear case of actual innocence . . . extensive relitigation is not required, the judicial resources to be expended are minimal, and the delay factor is insignificant."  *Id.* at 198.  As discussed herein, the Court disagrees that Cooper has presented a compelling case of actual innocence.

[8]  To the extent an argument was previously advanced by Salahuddin, but not Cooper, Cooper is nevertheless barred from obtaining coram nobis relief under the fourth prerequisite, which forecloses coram nobis relief when a petitioner could have raised an argument at trial or on appeal.  *See* Section III.B, *infra*.

have been found guilty of Hobbs Act conspiracy because "neither [he] nor his codefendant received anything of value, or agreed to the object of a conspiracy." (ECF No. 1 at 14.) On appeal, the Third Circuit rejected a similar argument advanced by Salahuddin, reasoning that "Salahuddin's argument misunderstands the requirements for inchoate offenses." *Salahuddin*, 765 F.3d at 341.  Cooper also contends that "[n]either [he] nor his co-defendant acted 'under color of official right' or engaged in 'an official act' in connection with this case." (ECF No. 1 at 14.) This argument, too, was rejected by the Third Circuit.  *See id.* at 349 ("A rational jury could have reasonably concluded that Cooper entered an agreement intending to commit extortion under color of official right, but took no substantial step in furtherance of committing that crime."). Finally, Cooper asserts that "[b]ecause the jury found Mr. Cooper and Mr. Salahuddin not guilty of agreeing to accept such bribes and of attempting to commit a Hobbs Act violation, they cannot be guilty of the same 'agreement' necessary for a Hobbs Act conspiracy as a matter of law, logic, and common sense." (ECF No. 1 at 24.)  But again, the Third Circuit disagreed. *See id.* at 341 ("[Salahuddin] claims that because elements of the substantive offense were lacking, the inchoate offense of conspiracy must necessarily be lacking also. But the substantive and inchoate offenses are separate crimes requiring different proof.").

To be sure, the post-trial proceedings and appeal pre-dated the Supreme Court's *McDonnell* decision.[9] In *McDonnell*, the Supreme Court "provided clarification as to what constitutes an 'official action' under the Hobbs Act." *Salahuddin*, 2018 WL 5342766, at *3. Cooper avers that because *McDonnell* "fundamentally altered the scope of the 'official act' requirement for inchoate and substantive Hobbs Act offenses," the district court's "jury instructions were inconsistent with

---

[9] Cooper also argues that he should be granted relief in light of *United States v. Manzo*, 636 F.3d 56 (3d Cir. 2011), but the Third Circuit distinguished *Manzo* in affirming Cooper and Salahuddin's convictions. *Salahuddin*, 765 F.3d at 339.

10

and deviated fatally from *McDonnell*." (ECF No. 1 at 28.) However, this issue was already considered and rejected by the court when it denied Salahuddin's coram nobis petition:

> Unlike *McDonnell*, wherein the defendant's alleged "official acts" included (a) arranging meetings, (b) hosting events, and (c) contacting government officials pertaining to broad issues such as "economic development," the Government, here, demonstrated that Salahuddin acted on "specific and focused" matters. . . . The evidence at trial included recorded conversations between Salahuddin, Mazzacchi, acting as an FBI informant, and Cooper. Mazzacchi and Cooper both owned and operated demolition companies in New Jersey, the latter of which Salahuddin maintained a concealed financial interest. . . . Notably, the recorded conversations evidenced an agreement by which Salahuddin would exercise his official power by influencing those in charge of awarding demolition contracts from the City of Newark and the New Jersey Devils to Mazzacchi, who was then expected to provide subcontracting work to Cooper. . . . Cooper, in turn, would receive a direct financial benefit, while Salahuddin would profit indirectly, through his silent partnership with Cooper. . . . Salahuddin also sought to maintain the demolition work in connection with the New Jersey Devils arena private, in order to avoid a public bidding process. Viewed cumulatively, the evidence at trial demonstrated that Salahuddin agreed to perform an official act which related to a "question, matter, [or] cause" on "something specific and focused that is pending or may by law be brought before a public official"— assigning government contracts.

*Salahuddin*, 2018 WL 5342766, at *11 (internal citations omitted).

Cooper offers no persuasive basis why this Court should depart from the sound reasoning set forth in Judge Wolfson's opinion denying Salahuddin's coram nobis petition. Cooper contends that Judge Wolfson's opinion "was erroneous in light of the jury findings on the substantive counts at trial, and the trial evidence here, and has no precedential authority." (*Id.* at 37.) More specifically, Cooper argues that Judge Wolfson erred because "only payment in return for an 'explicit promise' to perform or not perform constitutes an official act." (*Id.*) According to Cooper, the evidence at trial "negates any suggestion that there was a plan or scheme to provide Mr. Cooper with contracts." (*Id.* at 38.) But that avenue for relief is also foreclosed by the Third Circuit's

11

opinion denying Cooper's direct appeal. *See Salahuddin*, 765 F.3d at 347 ("To the extent that Cooper challenges the lack of direct evidence against him, that argument fails. While there may not have been direct evidence of a *quid pro quo*, the evidence of bribery and the unlawful nature of their agreement could be proven circumstantially. . . . Cooper suggests that his ambivalence about whether Mazzocchi paid him with cash or a check and his lack of effort to conceal the $5,000 payment he made to Salahuddin show that he did not have the intent to commit extortion. The jury was free to make this inference; however, there was ample evidence indicating that Cooper wished to join the conspiracy[.]") (internal citations omitted).

As Cooper has not shown sound reasons for the delay in bringing his petition, the Court could end its analysis here. *See De Castro*, 49 F.4th at 846 ("Because a petitioner must satisfy each of *Ragbir's* five prerequisites to obtain coram nobis relief, we could stop our analysis [after finding that the petitioner had not set forth a sound reason for delay]."); *Cocco*, 2024 WL 489537, at *3 (denying coram nobis relief after finding that the third prerequisite was not met); *Mazzini v. United States*, Crim. No. 10-84, 2025 WL 1135192, at *2 (D. Del. Apr. 17, 2025) ("Given [the petitioner's] failure to satisfy the third prerequisite for coram nobis relief, the [c]ourt need not assess the other prerequisites."). However, for the sake of completeness, the Court will address the final two prerequisites.

B. **No Available Remedy at the Time of Trial**

This prerequisite for coram nobis relief "focuses on whether a party was unable to make certain arguments at trial or on direct appeal." *Ragbir*, 950 F.3d at 63. The Third Circuit has noted that "[i]n some circumstances, overlap may exist between the coram nobis elements of 'sound reasons for delay' and 'no available remedy at the time of trial.'" *Id.* at 67 n.36; *see also De Castro*, 49 F.4th at 846 (finding overlap between the third and fourth coram nobis prerequisites where the defendant's arguments in support of coram nobis relief were not futile at the time of his guilty plea,

12

thereby establishing that (1) he failed to seek timely relief; and (2) that there was a remedy at the time of his guilty plea). Here, there is significant overlap between the third and fourth prerequisites because, as outlined above, many of Cooper's arguments were already made after trial and on direct appeal.

Cooper states that "there was no deliberate failure on [his part] to use a known remedy at the time of trial to address the issues raised herein." (ECF No. 1 at 16.) But "deliberate failure" is not the standard. If Cooper had a remedy but failed to pursue it, he is barred from obtaining coram nobis relief. *See Ragbir*, 950 F.3d at 63. At bottom, Cooper had the ability to argue that the jury instructions at his trial were erroneous. The court's denial of Salahuddin's coram nobis petition is instructive on this point:

> Contrary to Salahuddin's contentions, he was capable of challenging the disputed jury instructions before *McDonnell*. The Supreme Court's *McDonnell* decision "did not announce a new rule of constitutional law, but rather clarified the meaning of what constitutes an 'official act' under the federal bribery statute." . . . In that connection, the state of the law at the time of Salahuddin's conviction did not preclude him from objecting to, or appealing on the basis of, this Court's definition of an "official act." Although Salahuddin may have preferred a more "definitive articulation and analysis as to the concept of an official act," the absence of such does not excuse his failure to argue for a narrower construction of that statutory term in the trial or appeals court. Indeed, "[t]hat the law is unsettled does not justify a delay in filing a coram nobis petition. . . ."
>
> . . . .
>
> In fact, the *McDonnell* decision demonstrates that Salahuddin had the opportunity to dispute the Court's jury instructions. Notably, the petitioner, there, challenged the lower court's interpretation of an "official action" during, and at every stage of, his criminal trial.

*Salahuddin*, 2018 WL 5342766, at *9 (internal citations omitted).

For these reasons, and those addressed above regarding the timeliness of Cooper's petition, the Court finds that Cooper has not met the fourth coram nobis prerequisite.

13

### C. Fundamental Error

In the coram nobis context, the "[t]he term 'fundamental' refers to 'defect[s] which inherently result[ ] in a complete miscarriage of justice'" *Ragbir*, 950 F.3d at 63 (citation omitted). "Errors that can be remedied through a new trial do not usually fall within the writ." *Id.* Thus, errors in jury instructions "will not typically qualify as fundamental" unless they "result in a conviction on a charge based on activity that is lawful." *Id.* "Earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise." *Stoneman*, 870 F.2d at 106.

Here, for the same reasons that the Court rejected Cooper's contention that he is actually innocent, *see* Section III.A, the Court finds that Cooper has not met his heavy burden of showing that his conviction was the result of a fundamental error. *See also Salahuddin*, 765 F.3d at 348 ("Ultimately, the arguments that Cooper makes do not come close to suggesting 'that there is a serious danger that a miscarriage of justice has occurred.'") (citation omitted).

Even accepting Cooper's argument that the jury instructions exceeded the scope of what is permissible under *McDonnell*, that does not rise to the level of a fundamental error. *See Salahuddin*, 2018 WL 5342766, at *11 ("To the extent that the [c]ourt's definition of an 'official act' is overly inclusive, in light of *McDonnell*, this error does not rise to the level 'of the most fundamental kind' warranting coram nobis relief."); *see also United States v. Spellissy*, 710 F. App'x 392, 395 (11th Cir. 2017) ("[T]he district court did not abuse its discretion by denying [the] petition for writ of error coram nobis because [the petitioner] did not demonstrate that the alleged jury instruction error in violation of *McDonnell* was a fundamental error that made the proceedings irregular and invalid."); *Woodward v. United States*, 905 F.3d 40, 45-46 (1st Cir. 2018) ("To the extent that the jury instructions at [the petitioner's] trial did not perfectly anticipate *McDonnell*,

the daylight between those two definitions of 'official acts' is so slight that we cannot say we are before 'an error of the most fundamental character.'") (internal quotation marks omitted).

Accordingly, the Court finds that Cooper is not entitled to coram nobis relief because he does not meet three of the five prerequisites outlined by the Third Circuit. *See Ragbir*, 950 F.3d at 62.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Cooper's petition for a writ of error coram nobis (ECF No. 1) is **DENIED** and **DISMISSED**. An appropriate Order follows.

Dated: August 21, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE